# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASPER L. DOCKERY,** | : | **CIVIL ACTION NO. 3:16-cv-2123** |
| | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN C. MAIDRANS, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Jasper L. Dockery ("Dockery" or "Plaintiff"), a federal inmate incarcerated at the United States Penitentiary at Canaan, Waymart, Pennsylvania, filed the instant <u>Bivens</u>-civil rights complaint (Doc. 1) on October 21, 2016.  <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,</u> 403 U.S. 388 (1971).  Contained in the complaint are a number of denial of adequate medical care claims.  (Doc. 1, pp. 6-12).  The complaint also contains claims that Defendants improperly froze his inmate account and denied him postage.  (<u>Id.</u> at pp. 10-12).  Named as Defendants are the following individuals:  Deana Baysore ("Baysore"), Unit Manager; Thomas Horeis ("Horeis"), Chief Pharmacist; Michael Kabonick ("Kabonick"), Emergency Medical Technician; Kenneth Kaiser ("Kaiser"), Mid-Level Practitioner; Charles Maiorana ("Maiorana"), retired Warden; Nathan Mosier ("Mosier"), Trust Fund Supervisor; Dr. Susan Mowatt ("Mowatt"), Medical Doctor; Joseph Mushala ("Mushala"), Case Manager; Thomas Newcomb

("Newcomb"), Correctional Counselor; Jared Rardin ("Rardin"), Associate Warden; Shawn Taylor ("Taylor"), Health Services Administrator; and "Eye Doctor Sebastian" ("Sebastian").[1]

The subject of this Memorandum is Defendants' Partial Motion (Doc. 31) to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons set forth below, the Court will grant the Rule 12(b)(1) motion to dismiss and grant the Rule 56(a) motion for summary judgment.[2]

The Court will also consider Dockery's recent motion (Doc. 51) to file and "amend-or supplemental complaint."

## I.     Rule 12(b)(1) Motion to Dismiss

Defendants seek to dismiss the Bivens action against Defendant Horeis based on statutory immunity. (Doc. 36, pp. 5-6). Specifically, they argue that because Defendant Horeis was a member of the Public Health Service at all times relevant to the complaint, the Public Health Service Act("PHSA"), 42 U.S.C. § 233(a) precludes Dockery from pursuing a Bivens claim against him.

---

[1] Dockery also names Sandra Vallee ("Vallee"), Assistant Health Services Administrator. However, because he indicates that he did not intend to include her as a Defendant, (Doc. 52, p. 10), the complaint against her will be dismissed pursuant to Federal Rule of Civil Procedure 41(a)(2).

[2] The argument raised in Defendants' Rule 12(b)(6) motion will be considered in the context of summary judgment.

### A. Standard of Review

Rule 12(b)(1) allows for dismissal where the court lacks subject matter jurisdiction over an action. Motions brought under Rule 12(b)(1) may raise either a facial or factual challenge to the court's jurisdiction. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Conversely, factual attacks allow the court to delve beyond the pleadings to determine if the evidence supports the court's subject matter jurisdiction. Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1997). The party asserting subject matter jurisdiction bears "the burden of proof that jurisdiction does in fact exist." Id.

### B. Allegations Pertinent to Rule 12(b)(1) Motion to Dismiss Defendant Horeis

Dockery essentially alleges that Defendant Horeis intentionally interfered with, and refused to fill, medical prescriptions written by Defendant Kaiser. (Doc. 1, p. 6, 7).

### C. Discussion

It is well-settled that the PHSA precludes Bivens actions against individual United States Public Health Service ("PHS") officers or employees for harms arising out of the performance of medical or related functions within the scope of their employment. See 42 U.S.C. § 233(a); 28 U.S.C. §§ 1346(b), 2672; Hui v. Castaneda, 559 U.S. 799, 806, 130 S. Ct. 1845, 1851, 176 L. Ed. 2d 703 (2010) ("Section 233(a) grants absolute immunity to

PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct.").  It is undisputed that Horeis was a member of PHS at all times relevant to the complaint, and it is clear that the harms alleged arose out of the performance of medical functions within the scope of employment.  Consequently, the <u>Bivens</u> claim against Horeis will be dismissed.

### D.      Conclusion

The Court will grant Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.      <u>Motion for Summary Judgment</u>

### A.      Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Turner v. Schering-Plough Corp.</u>, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable

4

substantive law.  Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir.

1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 257; Brenner

v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283,

1287-88 (3d Cir. 1991).

　　　The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  Once

such a showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate

specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56; Celotex,

477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)

(stating that the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts"); Wooler v. Citizens Bank, 274 F. App'x

177, 179 (3d Cir. 2008).  The party opposing the motion must produce evidence to show

the existence of every element essential to its case, which it bears the burden of proving

at trial, because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Celotex,. at 323;

see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).  "[T]he non-moving

party 'may not rely merely on allegations or denials in its own pleadings; rather, its

response must . . . set out specific facts showing a genuine issue for trial.'"  Picozzi v.

5

Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(e)(2)).

"Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. Failure to Exhaust Administrative Remedies

#### 1. Statement of Material Facts

The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. 28 C.F.R. §542 et seq. An inmate must initially attempt to informally resolve the issue with institutional staff by completing a BP-8 form. 28 C.F.R. § 542.13. If informal resolution fails an inmate may submit a request via a BP-9 form to the Warden within 20 days of the date on which the basis for the request occurred. 28 C.F.R. § 542.14(a). An inmate who is dissatisfied with the Warden's response may submit an appeal using a BP-10 form to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office within 30 days of the denial. Id. If, at some level, the inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level. 28 C.F.R. § 542.18. An inmate is not

deemed to have exhausted his administrative remedies until the grievance has been pursued through all levels.  28 C.F.R. § 542.15(a).

On March 21, 2017, BOP staff conducted a review of Dockery's administrative remedy history, which revealed that, during the relevant time period, he filed eight administrative remedies. (Doc. 35, ¶¶ 5,6).  He filed administrative remedy 838196 regarding "improper medical treatment" for a stomach infection, which he fully exhausted by pursuing all levels of review.  (Doc. 53, pp. 85-100; Doc. 35, ¶¶ 7, 8; Doc. 35-1, pp. 80-85).

On April 4, 2016, Dockery filed administrative remedy 857395-F1 alleging that he was being denied eyeglasses and treatment for an eye infection.  (Doc. 53, pp. 54-59; Doc. 35 ¶ 9).  The Warden denied the request.  (Doc. 53, pp. 60-62; Doc. 35, ¶ 9). Dockery files with the Court a document purported to be an appeal to the Regional Office, but there is no indication that the document was ever filed with, or received by, the Regional Office.  (Doc. 53, pp. 63-65).  Dockery failed to appeal this administrative remedy to the Regional or Central Office. (Doc. 35, ¶ 9).  He also files with the Court additional appeal documents dated February 14, 2018, seeking to file his appeal out of time, none of which have been filed with the Regional or Central Office.  (Id. at pp. 66-68).

On or about April 18, 2016, he filed administrative remedy 859149-F1 regarding postage stamps, which the warden denied.  (Doc. 53, pp. 72-77; Doc. 35, ¶10).  Dockery appealed; the Regional Office rejected the appeal for procedural deficiencies and advised

Dockery to correct the deficiencies and re-file. (Doc. 53, pp. 78-81; Doc. 35, ¶ 11).  He refiled the appeal; the Regional Office rejected the appeal because he failed to provide the correct number of continuation pages.  (Doc. 35, ¶ 12).  He was advised to refile his appeal with the correct number of continuation pages within ten days. (Id. at 13). The record is devoid of evidence that he refiled the appeal.  He includes in his recent filings appeal documents dated February 14, 2018; they have not been filed with the Regional or Central Office.  (Doc. 53, pp. 82-84).

On August 25, 2016, Dockery filed administrative remedy 873976-F1, related to TB testing.  (Doc. 53, pp. 16-19; Doc. 35, ¶14).  The remedy was rejected because he failed to initiate the request through his counselor.  (Id. at 15).  He was instructed to file his remedy with the proper party within five days.  (Id. at 16).  He files with the Court a document dated February 14, 2018, which appears to be an after the fact appeal contending that he was unable to file the appeal in 2016 because he was denied postage. (Doc. 53, p. 20).  There is no indication that the document has been filed with any level of administrative review.  (Id.)

Although Dockery raises issues related to his back brace and medication in appeals of his initial remedy regarding his stomach infection, the Regional Office advised Dockery to raise any additional medical care issues by initiating the proper administrative remedy process.  (Id. at p. 3, note 2). Dockery failed to do so. (Id.)

2.  Discussion

Defendants seek an entry of summary judgment on all claims except the stomach infection claim on the ground that Dockery failed to fully exhaust his administrative remedies, as required by 42 U. S. C. § 1997e(a), prior to initiating this action. The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, —U.S. —; 136 S. Ct. 1850, 1856 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed. 2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57.

Significantly, "the PLRA contains its own, textual exception to mandatory exhaustion," i.e. the PLRA requires exhaustion of "available" administrative remedies. Id. at 1858. "Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 1858-59, quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001). There are three instances in which administrative remedies are unavailable. "First, as Booth made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may

9

promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide relief to aggrieved inmates." Id. at 1859. "Next an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

Finally, whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

Dockery concedes that he did not exhaust Administrative Remedy Nos. 857395-F1, 859149-F1 or 873976 F-1. In an effort to excuse compliance with the exhaustion requirement, and overcome an entry of summary judgment, he contends that because his trust fund was frozen and Counselor Newcomb denied him postage and copies, the process was unavailable to him. Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. See Todd v. Benning, 173 F. App'x. 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding in Miller v. Norris, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials

include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, see Harcum v. Shaffer, No. 06–5326, 2007 WL 4167161, at *5 (E.D.Pa.Nov. 21, 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, see Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, see Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, see Camp v. Brennan, 219 F.3d 279, 280–81 (3d Cir. 2000) (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers).

In Administrative Remedy 859149-F1, Dockery seeks to be declared indigent so that he may obtain postage stamps for the purpose of pursuing his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and other civil actions in the United States District Courts for the District of Columbia and the Southern District of Iowa.  (Doc. 53, pp. 69-81).  He argues that "F.R.P is void after 20-years."  (Id. at 72, 73).  It is clear from the Warden's response, set forth infra, that his funds were in fact encumbered in April 2016:

11

> This is in response to your Administrative Remedy, which was received in this office on April 19, 2016. You request to be classified as an Indigent in order to receive stamps.
>
> A review of this matter reveals you do not meet the qualifications to be considered indigent. Your funds are encumbered. Program Statement, 4500.08, Trust Fund/Deposit Fund Manual, states, "Funds the Warden encumbers may only be released upon his/her approval or upon inmate release." Accordingly, as you are not indigent, you will not be issued postage stamps.

(Doc. 53, pp. 74-77). It is equally clear that the encumbrance is rooted in the Inmate Financial Responsibility Program. There simply is no evidence that prison administrators encumbered his account for the purpose of thwarting him from taking advantage of the grievance process through machination, misrepresentation, or intimidation. <u>Ross</u>, 136 S. Ct. at 1857.

Further, it is evident that Dockery simply failed to exhaust his administrative remedies. There is no indication that he took any further action with regard to 857395 or 873976 after they were initially rejected. Only now, in response to Defendants' motion for summary judgment, does Dockery submit proposed appeals claiming that his attempts to appeal were impeded due to his frozen trust fund account. (Doc. 53, pp. 66-68; Doc. 53-1, pp. 20-24). With regard to 859149, when the Regional Office rejected the appeal on two occasions for procedural deficiencies, Dockery twice refiled the appeal of 859149. (Doc. 35, ¶¶ 11-13; Doc. 53, pp. 78-81). He failed to refile the appeal a third time per the Regional Office's instructions. (<u>Id.</u> at 13). His ability to twice refile the appeal belies his contention that he was unable to exhaust due to lack of postage and copies. And his

proposed administrative appeal executed in February 2018, contending that his ability to perfect his appeal was hindered by the frozen trust fund account and the inability to obtain postage and copies, is unavailing. (Doc. 53, pp. 82-84).

After an exhaustive review of the record, which includes a whole host of irrelevant filings submitted by Dockery (some related to his incarceration at various facilities dating back as far as 2011), it is clear that the failure to exhaust squarely rests on Dockery. (Docs. 35-1, 52, 53). At his own peril, he failed to cure deficiencies pointed out by the BOP. As noted *infra*, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90–91. It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Jones, 549 U.S. at 211–212. The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Dockery has failed to meet this burden.

3.    Conclusion

Dockery failed to properly exhaust his administrative remedies as required by the PLRA. Consequently, all his claims, with the exception of the stomach infection claim,

are procedurally defaulted.  See Spruill, 372 F.3d at 232.  Accordingly, he is barred from proceeding with these claims in federal court.

### C.    Merits of Remaining Eighth Amendment Claim

1.    Statement of Material Facts Regarding Stomach Infection

On September 10, 2015, Dockery reported to health services complaining of a urinary tract infection, pain in his leg, and internal hemorrhoids that prevented him from producing stool.  (Doc. 35, ¶ 18).  He sought surgical intervention to resolve the hemorrhoid issue.  (Id.)  At that time, he was seen by Defendant Kaiser and prescribed Tylenol for the leg pain and the provider ordered an x-ray of the abdomen to attempt to determine the cause of the stool blockage. (Id. at 19).  The x-ray results were normal absent a large volume of formed stool in Dockery's colon. (Id. at 20).  Upon review of the x-ray, the provider ordered medication to treat Dockery's constipation. (Id. at 21).

On October 1, 2015, Dockery reported to health services and requested of Defendant Kaiser an H. Pylori test. (Id. at 22).  On October 6, 2015, Dockery had blood drawn to test for H. Pylori, and Defendant Kaiser explained to him that the blood needed to be sent to an outside facility for processing.  (Doc. 35, ¶ 23; Doc. 35-1, p. 81).  The test results, which indicated a positive finding for H. Pylori, were received on October 14, 2015.  (Id. at 23; Id.).  On October 16, 2015, Defendant Mowatt initiated a plan that involved administration of medication and a follow-up retest of his stool.  (Doc. 35, ¶ 25).  On October 19, 2015, Dockery was prescribed 1000 mg of Amoxicillin and 500 mg of Clarithromycin to be taken twice a day for 14 days, as well as 20 mg of Omeprazole to

14

be taken twice a day for 30 days. (Id. at 26; Doc. 35-1, p. 81). A follow-up test was scheduled for November 2015. (Doc. 35-1, p. 107).

Dockery was seen at sick call at various times in October 2015, and December 2015, for unrelated ailments. (Doc. 35, ¶¶ 27-34). At other times, he was a no-show at sick call appointments. (Id. at 30, 34).

On March 2, 2016, he refused blood, urine and stool testing. (Id. at 35). He was advised "without this testing your health condition may worsen up to and including causing delaying a diagnosis and or death. you [sic] assume this responsibility by refusing this testing, you are making an informed, educated medical decisions by signing this form." (Doc. 35-1, p. 137). On March 21, 2016, Dockery reported for his chronic care visit with complaints related to his hemorrhoids, eye drops, and glaucoma. (Doc. 35 at 36). He reported to Defendant Sebastian intermittent bleeding due to hemorrhoids but made no mention of stomach or GI issues. (Id. at 37).

On April 21, 2016, Dockery reported to sick call requesting an antibiotic for a bowel infection, reiterated his previous hemorrhoid and constipation complaints, and reported that he gets up several times a night to urinate. (Id. at 38). Medical cautioned him about compliance with medications, informed he had labs pending, and advised to follow up at sick call as needed. (Id. at 39).

On June 21, 2016 Dockery's H. Pylori test returned with negative results. (Id. at 40).

     2.    <u>Discussion</u>

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197. Only egregious acts or omissions can violate this standard. See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. . . ." Estelle, 429 U.S. at 106. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a civil rights cause of action, and an inmate's

disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer, 991 F.2d at 69.

Courts will not second guess whether a particular course of treatment is adequate or proper. See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting . Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). See also, e.g., Gause v. Diguglielmo, 339 F. App'x 132, 136 (3d Cir. 2009) (holding a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation); Rush v. Fischer, No. 09-9918, 2011 WL 6747392, at *3 (S.D.N.Y. 2011) (stating "[t]he decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs."). Mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of "deliberate indifference." See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D.Pa. 1988). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail, 612 F.2d at 762, United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n. 2 (3d Cir. 1979); Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D.Pa. 1996.) "[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires." Farmer, 685 F. Supp. at 1339 (citation omitted).

*a.* *Supervisory and Non-medical Defendants*

Dockery names supervisory Defendants Maiorana, Rardin, Baysore, and Taylor. "[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

With regard to the second theory, a plaintiff must show that each the defendant personally participated in the alleged constitutional violation or approved of it. C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005); see also Ashcroft, 556 U.S. at 677 (finding that in a § 1983 suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). Liability "cannot be predicated solely on the operation of *respondeat superior*." Id. See also Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015). Personal involvement can be shown through proof of personal direction or actual knowledge and acquiescence. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in

that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

Dockery's threadbare claims against Maiorana, Rardin, Baysore, and Taylor are based on wholly conclusory legal allegations that fail to point to, or rely on, any policy, practice or custom. Further, there are no facts that these Defendants affirmatively denied him adequate medical care for his stomach infection through personal direction, or based on actual knowledge or acquiescence.

As concerns remaining Defendants Mosier, Mushala, and Newcomb, to the extent that Dockery's claim that he was denied adequate medical care for his stomach infection applies to them, the Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir.1993). In Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), the Third Circuit expanded upon its reasoning in Durmer, stating "[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate

indifference." <u>Spruill</u>, 372 F.3d 236.  There is no evidence that these Defendants had a reason to believe that Dockery was not being treated by medical personnel.

c.     *Medical Defendants*

Dockery fails to come forth with any credible evidence that Defendants Kaiser, Mowatt, Karbonic, or Sebastian intentionally withheld medical treatment, *i.e.* denied him timely and appropriate treatment and, in doing so, inflicted pain or harm upon him.  <u>See Farmer v. Carlson</u>, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); <u>Rouse</u>, 182 F.3d at 197.  In fact, the record indicates to the contrary.  Dockery was provided consistent and thorough care for his stomach infection through the administration of laboratory testing, three different medications, and follow-up care.

**D.     Conclusion**

Based on the foregoing, the Court will grant Defendants' motion for summary judgment.

**III.     <u>Motion to Amend or Supplement</u>**

A district court may exercise its discretion and deny leave to amend on the basis of undue delay, bad faith, dilatory motive, prejudice, or futility.  <u>See</u> In <u>re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir.1997) (citations omitted).  In this case, allowing amendment or supplement is futile.

Dockery seeks to amend or supplement his complaint to add a Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675, *et seq.*, claim.  The FTCA, which removes sovereign immunity of the United States from suits in tort, with certain specific exceptions, and

renders the Government liable in tort as a private individual would be under like circumstances, allows federal prisoners to pursue lawsuits against the United States to recover for personal injuries sustained during confinement due to the negligence of government employees.  United States v. Muniz, 374 U.S. 150 (1963); Richards v. United States, 369 U.S. 1, 6 (1962); 28 U.S.C. § 1346(b)).  Dockery argues that "the court should grant leave freely to amend and/or supplement his original complaint since Dockery had invoke[d] rights to be reserved to supplement FTCA claim in his original complaint."  (Doc. 51, p. 2).  Defendants vehemently oppose the motion on a number of grounds.  (Doc. 55).  Our discussion will be limited to Dockery's failure to exhaust his administrative remedies prior to filing suit and his failure to bring the claim within the applicable statute of limitations.

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency.  Specifically, "[a]n action shall not be instituted against the United States for money damages for injury or loss of property or personal injury...unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a). Thus, prior to commencing an FTCA action against the United States in federal court, a plaintiff must "first present[ ] the claim to the appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "The statutory language is clear that a court does not have jurisdiction before administrative remedies

21

have been exhausted, and a court must dismiss any action that is initiated prematurely."
Wilder v. Luzinski, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000) (citing McNeil v. United
States, 508 U.S. 106, (1993); Wujick v. Dale & Dale, 43 F.3d 790, 793-94 (3d Cir.
1994)).

Dockery filed an appropriate administrative tort claim, with the BOP pertaining to
his failure to provide proper medical care on September 8, 2016. (Doc. 51, p. 2). The
claim was assigned Administrative Claim No. TRT-NER-2016-06356. (Doc. 55-1, p. 1).
He filed the instant action on October 21, 2016. (Doc. 1). He received his final decision
on February 27, 2017. (Doc. 55-1, p. 1). Thus, he failed to receive a final decision by the
agency before filing his action in federal court, as required under 28 U.S.C. § 2675(a)
and, consequently, the Court is without jurisdiction. See McNeil, 508 U.S. 111-12
(holding that a court is without jurisdiction to rule on a prematurely filed FTCA action
even if an agency denies the related administrative claim soon after the federal lawsuit is
filed); see also Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015) (finding that the
district court properly dismissed FTCA claim where the plaintiff filed federal action prior
to exhausting administrative remedies). Therefore, even if the Court determined that the
amendment related back pursuant to Federal Rule of Civil Procedure 15(c), allowing the
amendment would be futile due to the jurisdictional defect.

The FTCA also requires a claimant to file suit within six months from the
agency's action on the claim. 28 U.S.C. § 2675(a). Here, more than a year elapsed

between the denial of the claim and Dockery's motion to amend to include the FTCA claim.  As such, his FTCA claim is also time barred.

Because Dockery is unable to cure the deficiencies of his FTCA claim, the Court will deny his motion to amend as futile.

Likewise, his request to "supplement" the complaint to add the FTCA claim will also be denied as futile.  The FTCA claim occurred prior to the filing of the complaint.  A supplemental pleading only applies to "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  FED. R. CIV. P. 15(d).

IV.    Conclusion

Based on the foregoing, the Court will grant Defendants' Rule 12(b)(1) motion to dismiss and Rule 56(a) motion for summary judgment. The Court will deny Plaintiff's motion (Doc. 51) for leave to amend or supplement his complaint.

An appropriate Order will enter.

BY THE COURT:


s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court


April 10, 2018